1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                        DISTRICT OF UTAH

 3                        CENTRAL DIVISION

 4

 5   UNITED STATES OF AMERICA,      )

 6              Plaintiff,          )

 7   vs.                           )   CASE NO.  2:07-CR-345DB

 8   HARRISON BEGAYE,               )

 9              Defendant.          )

10   _____)

11

12                BEFORE THE HONORABLE DEE BENSON

13                -------------------------------

14                        April 15, 2009

15

16

17

18

19                   Imposition of Sentence

20

21

22

23

24

25
```

2

```
 1                    A P P E A R A N C E S

 2

 3

 4     For Plaintiff:              TRINA HIGGINS
                                   185 South State Street
 5                                 Suite 400
                                   Salt Lake City, Utah
 6

 7

       For Defendant:             ROBERT STEELE
 8                                 L. CLARK DONALDSON
                                   46 West 300 South
 9                                 Suite 110
                                   Salt Lake City, Utah
10

11

12

       Court Reporter:            Ed Young
13                                 247 U.S. Courthouse
                                   350 South Main Street
14                                 Salt Lake City, Utah
                                   801-328-3202
15

16

17

18

19

20

21

22

23

24

25
```

```
 1   April 15, 2009                          2:00 p.m.
 2                    P R O C E E D I N G S
 3
 4           THE COURT:  United States versus Harrison Begaye.
 5   This is 07-CR-345.  Lynn Clark Donaldson and Robert Steele
 6   are here representing the defendant and the defendant, Mr.
 7   Begaye, is here.  Trina Higgins is here for the United
 8   States.
 9           Do you have an agent there?
10           MS. HIGGINS:  Yes, Your Honor.  This is Special
11   Agent Rachel Boisselle.
12           THE COURT:  Nice to have you here.
13           We'll proceed with this sentencing.  I have
14   received a motion for an upward departure from the United
15   States and a response from the defense and a letter from the
16   defendant.  I would be happy to hear from counsel for the
17   defense to begin with.
18           Mr. Donaldson, is that you or Mr. Steele?
19           MR. DONALDSON:  It is me.
20           First, Your Honor, a little housekeeping matter --
21           THE COURT:  Okay.
22           MR. DONALDSON:  -- in terms of a facility
23   recommendation.  We would ask the Court to recommend that
24   Mr. Begaye go to F.C.I. Seagoville, Texas.  Mr. Steele has
25   done the Bureau of Prisons calculation and we think that
```

4

1     either that facility or F.C.I. Marianna, Florida, and that

2     is to facilitate the participation in psychological and sex

3     specific treatment.

4                 THE COURT:  Where was the first one in Texas?

5                 MR. DONALDSON:  Seagoville.

6                 THE COURT:  Seagoville.

7                 MR. DONALDSON:  This is not a pleasant situation

8     for anybody, and some of the arguments that have been made

9     in this case, we make them in the context of the commission

10    of a very serious crime and Mr. Begaye acknowledges that.

11    Any contact of a sexual nature between an adult and a child

12    is grave.  I guess the point that I would make for the Court

13    is that at least when Mr. Begaye was first approached by

14    Special Agent Larsen and the interview proceeded, he does

15    seem to have an interest and his disclosure comes in the

16    context of a discussion about a number of things, but one of

17    those is about the possibility of getting treatment and they

18    discuss it, and being with the tribe or elsewhere, but

19    getting mental health treatment, the first time he had been

20    accused of having relations with his daughter and that came

21    up.  That was not a planned meeting.  It was not anything

22    that he had prepared for.

23                 I have attached the I.Q. testing that we had --

24                 THE COURT:  Right.  I have seen that.

25                 MR. DONALDSON:  I just don't think that Mr. Begaye

1    is the type of individual who is very sophisticated, and I

2    believe that that actually lends some credence.  I suppose

3    from an evidentiary standpoint, it is the horrible things he

4    disclosed, but we're here for sentencing and those are the

5    other things that he disclosed.  I think that lends credence

6    to his disclosures.

7         Some of the other things that we have pointed out

8    is about the testing of his then 11-year-old daughter and

9    her performance in school, and that may give the Court an

10   idea of what we think might be the range of the number of

11   acts that he committed.  One act is too many.

12        The other thing that I wanted the Court to know

13   and that Mr. Begaye wants you to know is that he does want

14   to get treatment.  He has done everything that he can do

15   virtually while he has been in the Davis County Jail.  He

16   has participated in every kind of program that was

17   available, including even going back to school, going to

18   parenting classes, going to everything that was there.

19        I didn't attach this, but I just wanted to read

20   you a short portion of a letter from a woman named Chris

21   Confrey who runs the New Directions program in the Davis

22   County Jail.  Inmates go to this and I think they have to go

23   to 24 sessions.  She says I was pleased to have Harrison as

24   a student in the New Directions classes.  He attended all of

25   his classes and participated willingly and eagerly.  He

1   acknowledged that there were changes that he would like to

2   make in his life and to set goals and to work toward those.

3   I believe the comments he offered to the group and the class

4   and with others were helpful.  In his quiet, calm manner and

5   civility he displayed an attitude of wanting to change.

6          It is hard to convey that to a Court and you're

7   always taking some kind of a risk when you latch onto that,

8   but I don't know what else he could have done given the

9   gravity of what he has admitted to.

10         Most of this is in our papers, but the one thing I

11  would say in terms of public safety and in terms of

12  deterrence, the guideline range as it stands right now

13  without any departure is very high.  It is a significant

14  chunk of a person's life.  Just to give you an idea as you

15  fashion your sentence and look at the 3553(a) factors,

16  consider this:  In ten years, in other words, once he has

17  been in custody for ten years, his oldest child will be 23,

18  about 24.  The next oldest child, the victim of the offense

19  that he pled to here, she will be 21.  The next oldest son

20  will be 19 years old.  Those are my calculations from the

21  dates of birth that we have received from the government.

22         This Court has incredible power to fashion

23  conditions of release.  You can put him on supervision up to

24  his natural life.  This is a man who previous to this time

25  has virtually no criminal record and has done about 30 days

7

1    in jail.

2              As some of the articles that I cited to you from

3    some of the psychological studies that have to do with

4    deterrence say, at some point, and I realize this can be a

5    component of any court sentence, and it is simply

6    retributive, but if we are talking about deterring conduct

7    and helping someone rehabilitate him or herself, which is

8    ultimately I think in some ways our best assurance of safety

9    for the community, that can be accomplished either at the

10   low end of the guideline range or a sentence in the ten-year

11   range.

12             If you have any questions, I would be happy to

13   answer them.

14             THE COURT:  No, I don't.  You can respond to Ms.

15   Higgins who I will hear from now.

16             MR. DONALDSON:  Okay.

17             MS. HIGGINS:  Thank you, Judge.

18             At the Court knows, the government is asking the

19   Court to upward depart in this case and to impose a sentence

20   of 360 months.  We are also asking the Court to impose

21   lifetime supervision to follow whatever term of

22   incarceration the Court ultimately imposes.  A 360-month

23   sentence in this case is warranted as an upward departure

24   and as an upward variance or either or both.  It is a

25   reasonable sentence and it is justified under the

8

1   circumstances of this case.

2          The Court has received the government's motion

3   outlining all of our reasons, and I'm aware that the Court

4   also viewed the video that was attached and the transcripts

5   and all of the psychological and physical health records of

6   the children.   I would like to briefly go through those

7   topics and answer any questions without rearguing all of the

8   same things in the memo.

9          The first reason that warrants an upward departure

10  in this case alone warrants an upward departure of 360

11  months, and each of these factors would alone and certainly

12  together warrant a departure of this size.   The first factor

13  that the government brought up in the brief and that I will

14  argue here is 5K2.8, the extreme conduct.   In this case the

15  defendant's behavior was unusually cruel and brutal and

16  degrading to this young victim.

17          Now, the defense argues in their response that it

18  does not make it any different from other aggravated sexual

19  abuse cases.   That is really the crux of 5K2.8.   Of course

20  this crime is cruel and of course it is brutal and of course

21  it is degrading, but why is this particular case unusually

22  so?   What makes this case different from the other cases to

23  warrant an upward departure?   Well, several factors.

24          One in particular is that this case involves two

25  aggravating factors, either of which would make this

9

1    aggravated sexual abuse.  Under 2241(a) sexual abuse is

2    enhanced to an aggravated sexual abuse if the person uses

3    force to abuse their victim.  Under 2241(c) sexual abuse is

4    enhanced to an aggravated sexual abusive if the sex abuse is

5    against a child, so there are two separate aggravating

6    factors.  In most child sex abuse cases we don't also have

7    force.  It is usually a situation of bribery or coercion

8    where the child is talked into it, the child is sleeping,

9    they use some sort of coercion or bribery.

10           That is not the case in this case.  We are talking

11   about a forcible rape.  The defendant pled guilty to and

12   admitted that he forcibly raped this child.  We have two

13   aggravating factors.  We have both the forcible rape and the

14   fact that this child is under the age of 12.  That is one

15   factor that makes this very different from your typical

16   aggravated sexual abuse is that we're talking about two.

17           THE COURT:  Why did you then not insist on

18   prosecuting that charge?  You want to let him plead guilty

19   to the lesser charge and yet still come in and get all of

20   the punishment for the more aggravating conduct.  Help me

21   out with that.

22           MS. HIGGINS:  Sure.

23           THE COURT:  Is that fair?

24           MS. HIGGINS:  Sure.  I will address that issue,

25   Your Honor.

```
 1            Something that we don't talk about generally is
 2    the reasons for the plea negotiations, and the defense
 3    raised it in their memorandum and already explained it to
 4    the Court and the Court asked a question so I will go into
 5    that further.
 6            The defendant was charged with a 30-year minimum
 7    mandatory.  The defendant would not plead guilty to a
 8    30-year minimum mandatory.  In order for the government to
 9    have gotten that 2241(c) conviction, the government would
10    have to put on a trial, and the Court knows I would never
11    back down from the trial, but this was about the children.
12    The Court read the mental health reports and the
13    psychological evaluations of these children.  Jamesina
14    Begaye is in no condition to take the stand and testify
15    against her father.  Putting her through a trial would have
16    caused cruel and unusual pain and suffering to that poor
17    girl.
18            She would have been further traumatized by having
19    to go through a direct examination and a cross-examination
20    and to sit before this Court and have sat through a trial.
21    Not only Jamesina but for Jareson and Jameson.  None of the
22    children wanted to come to court.
23            THE COURT:  Well, that may be, and I am not
24    contesting the reason that allowed him to plead to a lesser
25    charge, but you seem in one way of looking at it to want to
```

1   get the plea to the lesser charge and get the punishment for

2   the greater charge as if he had gone to trial.

3           MS. HIGGINS:  Your Honor, that is the case.

4           THE COURT:  It is a little bit like you want your

5   cake and eat it too.

6           MS. HIGGINS:  I think that is exactly the case,

7   Your Honor.  Let me point out a few things.

8           THE COURT:  Was he informed of that when he pled?

9           MS. HIGGINS:  Absolutely.

10          From the very first of the plea negotiations, and

11  Mr. Donaldson can attest to this, I made it very clear that

12  I felt the 30 years was an appropriate sentence.  I never

13  wavered on that.  30 years was an appropriate sentence.

14  When we discussed plea negotiations, one of the things that

15  we discussed was that I would be asking for an upward

16  departure.  That was kept open in the negotiations, that he

17  would be allowed to ask for a downward departure and I would

18  be allowed to ask for an upward departure, and he knew from

19  the beginning that it was my intention to ask for an upward

20  departure.  That has been known and that was on the table

21  from the beginning, all along, that I would ask for an

22  upward departure.

23          I don't think we ever discussed exactly what level

24  I would ask for.  I asked for this particular level because

25  it fits with the congressional decision that sex with a

1    child under the age of 12 is worthy of 30 years.  It seemed
2    in this case, with all of the factors, that this case should
3    be worthy of at least that minimum mandatory.  It has been
4    on the table from the very beginning that I would ask for an
5    upward departure.
6           Now, had we gone to trial, it is true that the
7    defendant would then be facing a 30-year minimum mandatory.
8    He would, in fact, had he been convicted of all charges,
9    there would be three counts of aggravated sexual abuse which
10   the Court could have run consecutively.  So in truth the
11   minimum mandatory, the very least the Court could have
12   imposed after trial was 30 years.  The Court could have gone
13   up to a 90-year minimum mandatory.
14          THE COURT:  I could go up to life.
15          MS. HIGGINS:  Well, that is true.  The Court could
16   even now go up to life.
17          THE COURT:  Life is the maximum under 2241(a).
18          MS. HIGGINS:  That is true.  The Court could
19   impose a life sentence under either.  So we are not talking
20   about changing the maximum in this case, we are just talking
21   about the minimum mandatory.
22          THE COURT:  I am only asking about the inducement
23   for a plea.  We would hate for the government to have its
24   future plea bargaining efforts hampered by some knowledge
25   that they are just pleading him into a trap.  They induce

13

1    you to plead to a lower charge and then get the same

2    punishment as if you had gone to trial, and at least the

3    perception might be that you're getting no benefit from

4    pleading.  I just wondered about that.

5              MS. HIGGINS:  Sure, because the ultimate benefit

6    is you may end up with the same sentence, but I think that

7    is not really that far from what we do in a lot of cases.

8              THE COURT:  Well, then why would anyone plead?

9              MS. HIGGINS:  Sure.  We plead from one charge to

10   another, but ultimately it is up to the Court.  The Court

11   could impose the same sentence in --

12             THE COURT:  There is usually some perceived

13   advantage, getting acceptance of responsibility or

14   something.

15             MS. HIGGINS:  The perceived advantage is exactly

16   what the Court sees in this case, and that is that the

17   defendant has the ability to argue for something less, the

18   possibility that he could put together enough mitigating

19   circumstances to convince a Court to go lower.  We kept the

20   ability to argue for that sentence.  So really it is just a

21   matter of taking this case and putting it in the Court's

22   hands.

23             I understand the concern that the plea is to a

24   different charge, and I am still asking for the minimum

25   mandatory, and maybe I would have been asking for more had

1   we gone to trial.

2          THE COURT:  Let him plead to A, and then as soon

3   as the presentence report gets done, it turns into C.  It is

4   a de facto C, not a de jure C.  It is a C, aggravated sexual

5   abuse of a minor, of a child under 12, and you want all the

6   punishment that goes along with that heinous crime.

7          MS. HIGGINS:  I am asking for that, Your Honor,

8   because the 30 years accurately reflects the conduct.

9   Ultimately that is what the sentence should do.  Regardless

10  of what plea negotiations went on between the parties, the

11  sentence should accurately reflect the defendant's conduct.

12  He is not denying that he raped a child, even though that is

13  not the charge he pled to.  He has admitted that he raped a

14  child at least three times.  This sentence should reflect

15  the conduct.

16          I want to talk a little bit more, but please

17  continue to interrupt me with any questions the Court has.

18          THE COURT:  There seems to be some information in

19  here somewhere, and I have looked at a lot, but the

20  defendant's family is of the opinion that he is not guilty

21  of anything.

22          Have you seen that?  Where did I get that from?

23          MS. HIGGINS:  I believe that was from a

24  conversation in the presentence report with his brother.

25  His brother felt the government was framing him.

1              Was that in the presentence report?

2              MR. DONALDSON:  Your Honor, I can help the Court.

3    It was in an interview Ms. Shuman conducted I think over the

4    phone with one of his brothers, I believe Joe Begaye.  That

5    is one person that --

6              MS. HIGGINS:  It is paragraph 43.

7              MR. DONALDSON:  That is who it is.

8              MS. HIGGINS:  It is in paragraph 43 of the

9    presentence report, Your Honor.

10             THE COURT:  Okay.  That the government set up his

11   brother.  Okay.  Thank you.

12             MS. HIGGINS:  In talking about 5K2.8, the extreme

13   conduct, the force of this and the degradation it was to the

14   victim, and as the Court saw in the video of Jamesina's

15   interview, she talks about this experience of her father

16   forcibly grabbing her and raping her and pinning her down,

17   either him on top of her or holding her down on top of him

18   while she is trying to escape.  As you watch her explain

19   this, you can see that this was not something where he just

20   talked her into it.  He didn't bribe her into it.  He used

21   force to rape this young child.  You can see her reaction to

22   that, that this was particularly degrading to her.  She said

23   every time he asked her does it feel good?  And every time

24   she said no.

25             Moving on to the next potential section for an

1    upward departure, Section 5K2.21, and we have discussed this

2    a little bit, this is whether the Court should consider the

3    dismissed conduct or the uncharged conduct.  In this case

4    the government charged in a superseding indictment six

5    counts, three counts of rape of a child and three counts of

6    aggravated assault.  As we have just discussed, due to the

7    plea negotiations, the defendant was allowed to plead to the

8    forcible rape rather than rape of a child, but both the

9    sentencing guidelines and the case allow this Court to

10   consider the dismissed conduct.  The Court should consider

11   that conduct when formulating a sentence that appropriately

12   and accurately reflects the defendant's conduct.

13           We have talked about the rape of a child, so let

14   me talk very briefly about the three counts of aggravated

15   assault.  I went through those a little bit in my sentencing

16   memo, and there were a lot of medical records and

17   psychological evaluations that talked about that further.

18   Here is a man who --

19           THE COURT:  That just bothers me a little and I

20   don't know why.  Maybe I do know why.  I am not sure it is

21   rational.

22           MS. HIGGINS:  Okay.  Which part?

23           THE COURT:  The part about in the guidelines

24   themselves we have 5K2.21 stating that the Court may depart

25   upward to reflect the actual seriousness of the offense

1    based on the conduct underlying the charge dismissed as a

2    part of the plea agreement in the case.

3            I think of a situation, and let's say someone was

4    originally charged with kidnapping and murder and does not

5    want to plead to the murder so they plead out to kidnapping.

6    Following this logic then we would sentence the person, if

7    we find from the facts that he committed murder.  That does

8    not make entirely a lot of sense to me.  If we had a jury

9    trial and we have the same situation and the jury came back

10   with a conviction on kidnapping and an acquittal on murder,

11   and if the Court at sentencing found the facts supported a

12   murder, which is more egregious than kidnapping, could that

13   judge sentence on the basis of a murder?

14           MS. HIGGINS:  We in fact have been in this exact

15   situation, Your Honor.  The Court may recall I tried --

16           THE COURT:  What is the answer to that question,

17   yes or no?

18           MS. HIGGINS:  The answer is absolutely yes.  The

19   case law supports that the acquitted conduct can be used.

20   In fact, we have been through this.  The Court may recall I

21   tried a child rape case in front of you some years ago.  The

22   case was originally tried in Judge Campbell's court where

23   the jury acquitted the defendant of forcible rape.  The case

24   was tried again before Your Honor on other counts that the

25   jury hung on, including rape by threat rather than force.

1    Also, child rape.  There was also a child rape count.  The

2    defendant was convicted of those counts.  We had this same

3    discussion at the sentencing hearing as to whether or not

4    the Court could consider the acquitted conduct, the forcible

5    rape for which the defendant had been acquitted.

6            The case law is very clear that the Court can

7    absolutely consider acquitted conduct because a jury's

8    verdict of acquittal does not mean not guilty.  It means the

9    government did not prove it beyond a reasonable doubt.  It

10   does not mean not guilty.

11           A plea negotiation in this case does not mean that

12   the defendant did not rape his daughter.

13           THE COURT:  No.  No one is suggesting that it

14   means that, but it does seem a little odd that he pleads

15   guilty to one thing and yet we sentence him as if he had

16   pled guilty to the other thing --

17           MS. HIGGINS:  It is absolutely the Court's --

18           THE COURT:  -- in reality.

19           MS. HIGGINS:  Under the case law as it currently

20   exists, this Court has huge discretion, and this Court can

21   decide what to give it, whatever weight the Court believes

22   is fair and justified.  It is the government's position that

23   that is the appropriate sentence in this case because it

24   accurately reflects the conduct.  Ultimately it is in the

25   discretion of the Court to make that decision.  This

1    defendant's conduct goes so far beyond what is --

2              THE COURT:  What he pled to?

3              MS. HIGGINS:  What he pled to, absolutely.  The

4    crime that he pled to, the one count crime that he pled to,

5    and the sentencing guidelines that are connected to that one

6    count do not take into consideration the years of physical

7    and sexual abuse of his children.  It does not take into

8    account any of the whippings, any of the poking with

9    needles, and it does not take into account the B.B. gun shot

10   in the face, and it does not take into account a tire iron

11   across the top of the head, and it does not take into

12   account the scars, the stitches.  These children are covered

13   in scars at the hand of Mr. Begaye.  None of that is

14   included in the calculated guideline sentence.  None of that

15   is included in the crime charged, but it accurately reflects

16   the conduct and the behavior of this man.

17             We talked just briefly about the extreme

18   psychological injury.  While it is true that to get this --

19             THE COURT:  Is it true that there is no evidence

20   that he was sexual with any of the other children?

21             MS. HIGGINS:  That is true.

22             THE COURT:  All of this you have been just talking

23   about is not covered in 2241 at all.

24             MS. HIGGINS:  The only sexual abuse is against

25   Jamesina.

1          THE COURT:  All that you told me was so egregious

2    and not taken into account, the marks he has left on the

3    other children, those were not involving any kind of sexual

4    misconduct?

5          MS. HIGGINS:  No.

6          THE COURT:  Okay.

7          MS. HIGGINS:  The only other daughters the

8    defendant has from Rena Begaye were very young at the time,

9    and Jamesina did not believe that they were being subjected,

10   nor do we, that there was any physical abuse.  The only

11   evidence is that the physical abuse was toward Jamesina and

12   no one else.  All of the other abuse does not fall anywhere

13   in 2241.  That falls under the category of dismissed

14   conduct, because that is the conduct that the government

15   intends to dismiss as a part of the indictment at the end of

16   this hearing.

17         That would be additional dismissed conduct that

18   would warrant an upward departure because it accurately

19   reflects what was going on, not just the sexual abuse.

20         5K2.3 talks about an extreme psychological injury.

21   Now, the tricky part about this is that the government has

22   to show that this injury was more serious than your average,

23   shall we say, sex abuse case.  It does not require expert

24   testimony.  The Court can see that Jamesina's psychological

25   damage is extensive.

1          Now, one would expect the victim of sexual abuse

2     to have P.T.S.D.  I think that is fairly common and we see

3     it a lot, but this young child has many other problems and

4     disorders.  She has adjustment disorders and anxiety.  She

5     has traumatic dreams and hallucinations.  Here is a child

6     who is barely hitting her teenage years and she is already

7     taking Seroquel for hallucinations.  That is extreme

8     psychological injury.  This is not just P.T.S.D. and she is

9     going to get over this.  A year after this she is still

10    being treated for hallucinations and anxiety, so there is

11    extreme psychological injury to this young child.

12         I want to talk about also the unidentified

13    characteristic which I brought up, and these really go

14    together, and that is the number of years this took place

15    and the number of times.  Now, the evidence to support the

16    fact that this happened far more times and over a much

17    longer period than what the defendant has admitted comes

18    primarily from the victim herself.  The Court had the

19    opportunity to watch the video and could weigh her

20    credibility, and you were able to actually see her when she

21    talked about it.  She said that it had been happening

22    approximately once a week since first grade.

23         Now, in a later report she told one of the

24    psychologists since second grade, so there is a discrepancy

25    between first and second grade, but we are still talking

1    about a matter of years, that this abuse has been going on

2    for years.  It wasn't a discrepancy of one time she said a

3    couple months and one time she said a couple years, the

4    discrepancy was first grade and second grade.

5              Now, there is an additional fact that I wanted to

6    put before the Court regarding this particular issue,

7    because I think this issue is really important, the length

8    of time and the number of times that this abuse occurred is

9    a really important factor in formulating the most

10   appropriate sentence.

11             The additional evidence is I have here with me an

12   employee of the U.S. attorney's office who was present when

13   we interviewed Jameson.  We interviewed Jamesina, Jareson

14   and Jameson.  As the Court read in the defendant's

15   memorandum, the guardian ad litem approved that and we went

16   and met with them at the shelter.  Their mother was present

17   but she was not in the room when we interviewed them

18   individually.  Mr. Donaldson has agreed that I could simply

19   proffer this evidence to the Court rather than put the other

20   person who was in the room on the stand and have her testify

21   to it.

22             When I spoke to Jameson Begaye, he said that he

23   had a pretty good idea about what was going on.  So I asked

24   him to tell me what he thought was going on and why.  He

25   said to me a long time ago my dad asked me to ask my health

1    teacher if a nine-year-old could get pregnant.  That

2    statement really stuck with us because it fits with

3    Jamesina's statement.  A nine-year-old would be at about

4    second or third grade, so this had been going on for years.

5    Mr. Begaye had his son ask his health teacher whether or not

6    a nine-year-old could get pregnant to make sure, because he

7    certainly didn't want to impregnate his young daughter, but

8    that is further evidence that Jamesina was telling the truth

9    when she said that this had been going on for years.

10           Now, if the Court would like I could have that

11   testimony put on the record through the other witness, but

12   Mr. Donaldson felt it would be enough for me to just proffer

13   it.

14           THE COURT:  That is okay.

15           MS. HIGGINS:  Thank you.

16           THE COURT:  You don't need to put her on.  Is it a

17   her or a he?

18           MS. HIGGINS:  It is Ms. Cecilia Swenson.  She is

19   our victim coordinator from the U.S. attorney's office.

20           The fact that this went on over a number of years

21   and so many times is not anywhere included in the

22   calculation of the defendant's sentence.  The calculation of

23   the sentence and the guideline range in the presentence

24   report would be exactly the same if this happened once.  If

25   Harrison Begaye had one time raped his daughter, he would be

1    facing the exact same sentencing guideline range that is in

2    his presentence report.  He himself admits that he raped her

3    at least three times.  She said it had been going on since

4    first or second grade, approximately once a week.  There is

5    no enhancement for that in the guidelines, there is no

6    upward departure for it included, but it is a factor, it is

7    a factor that the Court should consider.  When fashioning an

8    appropriate sentence in this case, the Court should consider

9    the number of years and the number of times that Mr. Begaye

10   subjected his young daughter to this abuse.

11          Now, aside from the upward departure that the

12   government is asking for, and I have just covered all of the

13   reasons within the sentencing guidelines manual that the

14   Court should upward depart, and that alone is reason for the

15   Court to impose a sentence of 360 months.

16          Along with that, a sentence of 360 months is

17   warranted as an upward variance.  Going through the factors

18   in 3553(a), those factors apply to this case and warrant a

19   sentence of 360 months.  I won't go through each of them

20   because I think they overlap greatly with all of the things

21   that I have talked about in the upward departure.  But if

22   you start looking at the nature and circumstances of this

23   crime, it certainly warrants the 360 months which Congress

24   felt was a minimum mandatory, a minimum sentence that should

25   be imposed for just one rape of a child.  In looking at the

1    nature and circumstances of this case, that would be the

2    appropriate sentence when considering how many times the

3    defendant raped his daughter, and how cruel he was and how

4    brutal these rapes were to this young girl and the damage

5    left upon her.

6           None of the factors weigh in favor of giving this

7    defendant a sentence under the guideline range.  I would ask

8    the Court to impose a sentence of 360 months incarceration

9    and a lifetime of supervision.

10          THE COURT:  Thank you very much.

11          Mr. Donaldson, do you want to say anything in

12   response?

13          MR. DONALDSON:  Yes.

14          Let me just start with your question about the

15   plea negotiations.  I suppose any time there is a

16   conversation everybody has their perspective on things.  Let

17   me tell you this much, that we did discuss the possibility

18   of stipulating to sort of an 11(c)(1)(C) kind of situation

19   where the Court would be limited to the guideline range, the

20   appropriately calculated guideline range.  We discussed a

21   lot of things.  I am not saying that Ms. Higgins didn't say

22   during our negotiations that she thought this case might

23   warrant 30 years.  I don't know that we went into this

24   thinking that she would file an upward departure requesting

25   30 years.

1           We did agree that the parties were not bound, as

2      the rules permit, to make arguments for a non-guideline

3      sentence.  That part is true, but I still think that the

4      arguments that I made, and at least some of the concerns the

5      Court has referenced under 5K2.21, that those policy

6      concerns hold true.  Any departure is discretionary.  5K2.21

7      says the Court may depart upward.  5K2.3, 5K2.8, every

8      single basis they are asking for is discretionary.

9           To be a little more specific, taking 5K2.28, you

10     may be familiar, and maybe not, that there is a case called

11     U.S. versus Holly and the majority writer is Judge Murphy,

12     and it has to do with the application in a civil rights

13     action that was brought against a county sheriff and the

14     meaning of force under Section 2241(a), the section of the

15     statute that Mr. Begaye pled to.

16          In discussing what force meant and whether the

17     instruction given to the jury in Mr. Holly's case was

18     appropriate, the Court analogizes to situations where there

19     is a lot of sort of a desperate relationship, a father and a

20     child, a county sheriff or a jailer, the commander of a jail

21     and an inmate, and basically what it says -- I think I made

22     this comment at the time you took his plea about force.  It

23     says, and I am looking at page -- I will give you the cite

24     here.  It is 1301 of U.S. versus Holly, 488 F3rd at 1298.

25     It says the requirement of force may be satisfied by a

 1    showing of restraint sufficient to prevent the victim from

 2    escaping the sexual conduct.  Force may also be implied from

 3    a desperate and coercive power or insight between the

 4    defendant and the victim or from the disparity and force of

 5    the power combined with the physical restraint.

 6            Basically what the case law says is that they draw

 7    from the guideline that applies here, and what the Tenth

 8    Circuit does is they say we are going to take our guideline

 9    case law on what force is and when that specific test

10    characteristic applies and we're going to use it to

11    interpret the statute.  I guess my point is that that is

12    already considered and he gets that increase because he pled

13    to the statute and that is what it means at a minimum.

14    Enough about that.

15            I pointed out Reyes Pena, and if you look at Reyes

16    Pena, the facts in this case, and this is sort of like which

17    is most ghoulish, the facts in Reyes Pena in some ways are

18    more aggravated than what you have got here in terms of the

19    kind of force that the stepfather or father used in that

20    situation.  Enough said there.

21            I would ask the Court not to grant the extreme

22    conduct increase.

23            In terms of the dismissed conduct, I have some of

24    the concerns, as I said, that this could cause -- basically

25    if there is no benefit for someone pleading in a situation,

1    then the cases will go to trial.  I think it is an

2    appropriate consideration for both the government and in the

3    right cases, assuming the defendant cares, and he should

4    care or she, whoever the defendant is, that the trial can

5    have a really deleterious effect on the children.  It can be

6    traumatic and tough.  It may have long lasting impacts.

7            If in this situation we basically allowed a plea

8    with the lower guideline and then turn around and basically

9    say, well, no, we are going to give the mandatory minimum,

10   the kind of things that the Tenth Circuit said in the Daisy

11   case about huge increases really should apply here, that the

12   Court needs to be very certain.  In a way we pled and there

13   are lower standards and there are no Rules of Evidence and

14   it is in a way easier to allege and just under the

15   guidelines get -- anyway, you understand it.  I won't

16   belabor that anymore.

17           In terms of the extreme psychological injury,

18   again, this is the context we are in.  Posttraumatic stress

19   disorder is a horrible thing.  It is horrible.  I have had

20   clients that have had it and I have seen children that have

21   had it and it is bad.  Unfortunately, I think it is more

22   common than not in many of these situations and in an

23   offense like this, so I don't think that the increase

24   applies.

25           As to the unidentified characteristics, you're

1    well familiar with the Coon case and the Supreme Court's and

2    the Sentencing Commission's position.  They have thoroughly

3    and exhaustively looked at guidelines like 283.1 and they

4    have amended that guideline 11 times since its adoption in

5    1987.  It is hard to say that they wouldn't take situations

6    like this into consideration.

7         The other thing is in terms of the proffer, and I

8    have no doubt that the oldest son with initials J.A.M., that

9    he may have said what he said to Ms. Higgins in February of

10   this year when they went down to talk to him, that his dad

11   said something a couple years earlier.  I'll also tell you

12   that we interviewed -- it wasn't me, it was Ms. Koch and

13   Mr. Sebert, an investigator from our office, but they

14   interviewed every single teacher, the principal, everybody

15   at this school, Bluff Elementary.  It is about a 70 or

16   80-student -- it is not quite a one-room school house -- not

17   one of them could think of any sort of indicator except

18   possibly maybe a little bit of a change in the academic

19   performance of J.A., the then ten or 11-old-year-old girl,

20   that there was any indication of this in looking back.

21   These people were lamenting the situation and they wanted to

22   do better in the future, so to speak.

23        I would ask the Court because of the grounds of

24   rehabilitation, and because Mr. Begaye desires to get help

25   and to make up for what he has done, and because treatment

1    can be effective, to consider imposing a sentence of less

2    than the guidelines.  You have my papers.

3              Thank you.

4              THE COURT:  I do on that.  Thank you.

5              We have a motion both ways here, a motion for an

6    upward departure and a motion for a downward departure.

7              Mr. Begaye, would you like to say anything in your

8    own behalf?

9              MR. BEGAYE:  Yes, Your Honor.

10             THE COURT:  You may.  You can step to this

11   microphone.  It might be easier to hear you there.

12             MR. BEGAYE:  Good afternoon.  You know my name.  I

13   am here -- not here to argue with the Court or anything.  I

14   am not making a name for myself by breaking the law.  I am

15   just here -- I just hope that the Court will have mercy on

16   me and give me a chance to be a father and a husband and a

17   dad and work as a family and united and heal our hearts and

18   our minds and souls as a united family.

19             That's all that I ask.

20             THE COURT:  Thank you, Mr. Begaye.

21             On the motion for downward departure brought by

22   the defense, I deny the motion.  On the motion for an upward

23   departure brought by the government, I grant the motion and

24   for the following reasons:  I find that the crime that was

25   committed, looking at all of the facts and circumstances,

1   represented a crime that was unusually heinous, cruel,

2   brutal or degrading to the victim.  I will refer to 5K2.8 of

3   the guidelines, the sentence guidelines and that language,

4   and recognizing in the guideline system that that is

5   anticipated to be a possible ground for an upward departure.

6          I also find that 5K2.3 represents that where the

7   facts indicate, a psychological injury and a physical injury

8   more serious than normal has been demonstrated to the Court

9   in this case.  I don't feel that 5K2.21, which indicates the

10  Court can refer to the facts underlying a charge dismissed

11  as part of the plea agreement in the case, as I said in my

12  questioning of Ms. Higgins, makes a lot of sense to me.

13         What does make sense to me is that Mr. Begaye pled

14  guilty to aggravated sexual abuse under Section 2241(a), and

15  that is an admission of aggravated sexual abuse of another

16  person on an Indian reservation by force or threat.  That is

17  what he pled to.  I am entitled as the Judge to look at the

18  facts and circumstances that underlie that plea.  That

19  includes in this case the fact that he repeatedly had

20  improper sexual intercourse with his young daughter over,

21  the facts demonstrate to me, a period of years.  I am

22  looking at those as the actual facts of this case and not

23  looking at those as the facts that underlie or that were the

24  basis for another count that has been dismissed.  Those are

25  the facts of this case.

1          Because the statute that I took the plea under and

2     on which I'm sentencing carries a sentence, statutorily, a

3     maximum of life in prison, I'm only looking at those

4     underlying facts to help me decide what is the most

5     appropriate sentence.  I'm using the guidelines, which in

6     this case have a range of 210 to 268 months, and I am going

7     above that because of the two reasons that I just indicated,

8     under 5K2.8 and 5K2.3.  I am staying generally within the

9     guideline process for doing this.

10          I do think sentencing sometimes gets away from

11     itself.  No matter how many sentencing guidelines we write

12     and how many judges try to figure it out, we are still

13     basically looking for what happened and the nature of the

14     man who made that happen.  Here I find the facts to be, as

15     anyone would, egregious and wrong and bad by any standard.

16     I think sometimes we forget how much time it is too.  I find

17     an appropriate sentence to be here a 25-year sentence which

18     is an upward departure of some roughly two and a half years.

19          I will refer briefly to Section 3553(a) and the

20     factors that are always to be considered by a court in

21     imposing a sentence, and indicate that I feel that a

22     sentence above the sentencing range is necessary to reflect

23     the seriousness of the offense and to promote respect for

24     the law and to provide just punishment, and especially in my

25     view to afford adequate deterrence to others.

1          I would hope that somehow, and this is always a

2    hope and I never know if it happens, but I would hope that

3    some message gets out that if you do this kind of thing, in

4    particular have sex with a young daughter, that you're

5    looking at 25 years in federal prison at least.  I am not

6    unaware of the fact that in the state court this would most

7    likely be a -- I'm guessing -- but I think it would be a

8    15-year sentence at the top.  I don't know.  There are a lot

9    a different ways people get punished in this country.  I

10   think 25 years is a harsh penalty.  I think Mr. Begaye

11   deserves it for what was done in particular to this one

12   young daughter.

13          I am not ignoring also the other relevant evidence

14   of the abuse that was administered to the other children as

15   well, which is inexcusable also.

16          With that explanation I'm going to also require a

17   supervised release period of life following his term of

18   incarceration.  Mr. Begaye will be required to allow this

19   presentence report to be released to the state sex offender

20   registration agency if required for purposes of sex offender

21   registration.  I'm going to require on supervised release

22   that the defendant participate in a sex offender treatment

23   program as directed by the probation.  I will restrict the

24   defendant from contact with individuals under 18 years of

25   age without adult supervision and as approved by the

1    probation office in advance.  I'll require the defendant

2    during supervised release to have his employment decisions

3    approved in advance by the probation office.  If the

4    probation office requires, he will be obligated to inform

5    his employer of his supervision status.

6            The usual rules regarding reasonable searches will

7    be included.  I'll require the defendant to submit to drug

8    and alcohol testing as directed by probation and pay a

9    one-time fee to help defer those costs, and participate also

10   in a substance abuse evaluation and treatment program under

11   a co-payment plan as directed by probation.  I find the

12   defendant does not have the ability to pay a fine and waive

13   the fine.  I order a special assessment fee in the amount of

14   $100 which is due immediately.

15           I grant the government's motion for the dismissal

16   of all counts except for the ones the defendant pled guilty.

17           MS. HIGGINS:  The defendant pled guilty to an

18   information, so we would ask the Court to dismiss the entire

19   indictment.

20           THE COURT:  The indictment is dismissed on that

21   motion of the government.

22           I will recommend the facilities as requested by

23   Mr. Donaldson, Seagoville, Texas, and, if that is not

24   available, the facility in Marianna, Florida for treatment

25   opportunities.

1          Anything else?

2          MS. HIGGINS:  Nothing further, Your Honor.

3          THE COURT:  Mr. Donaldson?

4          MR. DONALDSON:  No.

5          THE COURT:  Good luck to you, Mr. Begaye.

6          We'll be in recess.

7          (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25